UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**RACQUEL LEWIS - DAVIS**              *

    (Plaintiff)                              *

                                                                *

v.                                                       *       case number:

                                                                *

**PEC - GLORIA'S PLACE**                *

**KATHLEEN DESMOND, PRESIDENT**    *

*   *   *   *   *   *   *   *   *   *   *   *   *

**PLAINTIFF'S CLAIM of ONGOING HARASSMENT AGAINST PEC - GLORIA'S PLACE**

Plaintiff - Racquel Lewis - Davis - Pro Se brings this action to PEC - Gloria's Place pursuant to - 42 U.S.C § 2000e-3(a); Civil action for deprivation of rights - 42 U.S. Code § 1985(2)(3); Conspiracy Statute - 18 USC Sec. 371; Title III of the Omnibus Crime Control and Safe Streets Act of 1964 (Wiretap statute) - Electronic Communications Privacy Act - 18 U.S.C § 2510, 3121; Stored Electronic Communications - 18 U.S.C § 2701; and Violation of Privacy by way of Intrusion of Solitude including Stalking and cyberstalking - 18 U.S.C § 2261(1)(A)(1)(2)(B)(2)(b); Conspiracy Against Rights - Title 18 U.S. Code §§ 241, 242; Defamation - 28 U.S.C § 4101(1); U.S. Code Title 50 Chapter 36, Sub 1, Sec 1809(1): U.S.Constitution - Fourth Amendment; Intentional Infliction of Emotional Distress - Tort Law to enjoin the named Defendants from Discriminating and retaliating in a continuing violations theory to conspire against the Plaintiff of her civil rights, privileges or immunities secured or protected by the Constitution of the United States and Federal statutes.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U. S. C. §1367; *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). Corporate.findlaw.com states cases can be brought in either a state or federal court if the claim in suit exceeds $75,000; AND if the Federal Question is the issue 28 USC Sec 133 and if Federal laws have been violated.

3. This Venue is proper in the United States District Court for The Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b) and (c). All claims set forth in the Complaint arose in said District.

## PARTIES

4. Plaintiff is a citizen of the United States of America. Plaintiff is a resident in Philadelphia.

5. Defendant -PEC Gloria's Place in the State of Pennsylvania.

## DEFAMATION/STALKING HARASSMENT/RETALIATION

- January 2020 - Plaintiff was told by the staff, "you are not able to stay out on the weekends". "If you do, you make them believe you have some place else to go". Other residence left consistently on weekends.

- **February 2020** - Case Manager, Behavioral Specialist and the Director of Organization & Learning held a planning meeting with Plaintiff. Plaintiff was required to write down triggers. They asked the Plaintiff to speak about triggers and solutions. Plaintiff also expressed some of her past experiences and how it relates to the triggers. The Behavioral Specialist stated, "well those things are designed to make you insane". She was then pulled out of the room by the Sowshan Moore - case manager for a private discussion.

- **January / February 2020** - Roommates attempted to bribe Plaintiff "help us help you", "I don't want no more hoopties". Spoke very authoritative and claimed to be a prophet. After submission of the complaint in February, roommate began to show major dislike for plaintiff. 2 Occasions bumping into Plaintiff intentionally. **(Bribery/Stalking/Harassment)**

- Plaintiff and minor child were subjected to intentional adverse actions by the residents and staff at Peoples Emergency Center - Gloria's Place. Plaintiff's roommate spread urine substance onto the drinking water bottle of the Plaintiff and also threw a cup or bowl of Fruity Pebble Cereal onto Plaintiffs sons storage bins on the Plaintiffs side of the room, after the complaint was filed in February.

- Case Manager called Plaintiff crazy on 2 occasions. (January in person, April during a phone conversation). Case Manager yelled at Plaintiff and gave incorrect information regarding custody exchange and the rules for COVID - 19 overnight stays. When the plaintiff

questioned the information and voiced uncertainty the case manager responded with, "if you are that scared of him..." and "you sound crazy in your thinking", "you're thinking like a crazy person".

- **April 2020** - Plaintiff was called a "hoe" by resident on the 2nd floor. **(Slander)**

- May or June 2020 - Staff Cafeteria "first you up here (hand gestures) now you down here", I see you, I see you". Laughed and saying as she walked away, "I don't understand it". Plaintiff was the only other person in the cafeteria and Staff looked at Plaintiff when she was saying it. (Please see CCBC AOL Email hack regarding this phrase). ONGOING RETALIATION; DEFAMATION

- **July 29, 2020** - Resident came over to the church inquiring about Plaintiff. Church is directly across the street from the shelter. Plaintiff volunteered there. Resident told a story to someone at the Church that she asked Plaintiff to "babysit" and the Plaintiff "said I would not babysit for her". She added that the Plaintiff is "standoffish". (Slander/stalking behavior).

- If Plaintiff opened the door, the roommate would close it. Plaintiff would open the door for air to circulate due to the toxic air of urine and an occasional stink bomb.

- Plaintiffs son was picked on by other children "he has ADHD" and called him "ugly".

- **August 1, 2020 Plaintiff** stood outside ringing the doorbell and knocking on the window for over 20 minutes. Another time Plaintiff was outside over 5 minutes.

- **September 18, 2020 6:30 AM** (Intimidation, Violation of Privacy, Harassment)
  **Roommate called Plaintiff petty, tried to fight her, expressed being offended by Plaintiffs non-offensive music, accused Plaintiff of saying things to her every morning.** Roommate walked out of the room slamming the door at 5:00am. Roommate came into the room, Plaintiff told her, "I didn't want to take credit for watching your son, the staff actually did". Roommate responded, "oh, then I am being nice to you for nothing".

- **September 22, 2020** 12:00 PM - Plaintiff was in the TV lounge with son preparing for a custody hearing on Thursday 9.24.2020. To relieve stress, plaintiff kind of grunted. Plaintiffs son began to laugh and it became a joke while plaintiff repeated the action. Plaintiff heard her name being called and she went into the direction. Resident from room 3 was standing by the elevators on the phone. Plaintiff asked if someone called her name. Resident says, "I am on the phone with ---- and she asked who is yelling and I told her "Plaintiffs Name" the lady in Room 1, she is weird". Then she proceeded to tell Plaintiff to "mind your own business".

- On October 16, 2020 - My Son (12-years of age) was going to take a shower between 7:45 - 8:30 am. Shantay and was in the cafeteria. Her son was in the bathroom. He was staring at my son as he always does. My son asked, "why are you staring at me"? The little boy told his mother that my son said something to him and so she (Shantay) went to the bathroom and jumped into the face of my son and began threatening him "I will beat your fucking ass; don't you ever say anything to my son again". She then came to me as staff reported the incident to

- me and she began to tell me, angrily, that she will "beat his ass". I walked away and told her she wasn't. The next morning. Shantay threatened my son again. "Imma beat your fucking ass, (minor child's name" she left the room and came back and was yelling "imma beat your fucking ass" down the hall as she left the building. Police Report - DC# 20-16-038676 (#4B95 or 4895).

- The week of November 30, 2020 Shantay was walking on Lancaster avenue with her son. She was on crutches. She began to yell across the street to me "bitch, bitch". I walked in the other direction. She stared at me the entire time until I was out of her eyesight.

- On December 12, 2020 - Plaintiff was physically threatened by a resident which should be on camera because it happened in front of the building as Plaintiff was exiting the building.

- Plaintiff asked if she "could hold down the noise a little" and she replied, "I'm trying to get ready for work". "Every morning you have something to say, every morning you start trouble". Plaintiff went to talk with staff. The roommate stood in the hallway and watched Plaintiff and then approached Plaintiff in the front with a brush and got in Plaintiffs face. One Staff pretended to hold plaintiff back after waiting a few moments to come out of the office after roommate was already in the face of the Plaintiff with a brush. Roommate said repeatedly that "you always got something to say". Plaintiff responded, "I don't say anything to you". Roommate responded, "through your music you say things". The roommate then called the Plaintiff, "petty", "you should have just come to me and talked to me". Plaintiff didn't talk to her. Plaintiff didn't stay in the room when she was in the room. (staff orchestrated events - noise activity, intimidation, threatening acts of physical harm and defamation). Plaintiff never said anything to anyone about the roommate.

- Staff was being instructed on not feeding Plaintiff. Plaintiff have food allergies. Staff would either leave and not put out breakfast, lunch or dinner or put out food Plaintiff cannot eat. Staff would be instructed to feed the Plaintiff. ("0xFeedFood").

**VIOLATION OF PRIVACY - INSTRUSION of SOLITUDE** (*real-time access to Plaintiffs phone*).

- **March 2020** - When Plaintiff was moved to a private room on the 2nd floor due to Covid 19 shut down, items were removed from Plaintiffs room. On the first day a full-length mirror was removed when Plaintiff went downstairs to gather more items from her locker. A few weeks later, the window screen was removed from the window. Plaintiff searched for it outside and could not locate it. **Entering a resident's room and stealing items violating the privacy of the residents.**

- **April 22, 2020** - Plaintiff went to get dinner and was approached by a former roommate who lashed out on Plaintiff. She watched the Plaintiff and said, "what you do in the dark will come out in the light". Plaintiff was on the phone with management scheduling a time to conference for a school project. Plaintiff had no other conversation or contact with the roommate since March when she went upstairs to Quarantine. The roommate clearly had access to Plaintiffs phone conversations and misunderstood the conversation. Violation of

Privacy by way of Intrusion of Solitude.

- Plaintiff had private telephone conversation with the Career Developer and answered questions of "did you ever have an IEP", highest level of education amongst other questions. Staff walked by Plaintiffs room and projected her voice "liar, I'm not buying it". She was alone and there was no one else there.

- July 14, 2020 Resident swept a mess in front of Plaintiffs locker. Plaintiff took a picture. Resident came very emotional, yelling and saying, "she always taking pictures". No one was around when the picture was taken by the Plaintiff. **(Violation of Privacy by way of Intrusion of Solitude).**

- There was also a video recorder in Room 6 white. I hung from the ceiling and pointed directly down the hall to Room 1 (Plaintiffs room). Monitoring all hallway activity. However, it was in a resident's room. One of the residents from that room made a comment walking down the hall that she "don't want Ray-Ray and them to know every time I take a shower") **(Violation of Privacy)**

- Police officer friend (at the time) from the 16th District next door to the shelter actually told the Plaintiff the exact outfit she slept in while in the shelter. She woke up to use the bathroom which is across the hall from her room. Room 1.

- **August 9, 2020** - Plaintiff attended a child's birthday party out of state. Content talked about on Plaintiffs personal calls with family regarding the party was being discussed amongst roommates in earshot of the Plaintiff. Residents read off of their phones catch phrases - "Party", they talked about "arriving at 7pm", "she said its petty". All things talked about in private conversation.

- **August 11, 2020** - Neighbor resident came out of her room as Plaintiff was at her locker and said "I block the number and then I answer the call when they call". Plaintiff just blocked a number and then unblocked it and when the person called Plaintiff answered the call. This happened right before Plaintiff went to her locker.

- **August 18, 2020 - Approximately 8:30pm:** Staff stood at the threshold of the kitchen door and projecting her voice down the hall to the dorms, regarding having trouble finding parking and moving to Delaware or New Jersey "what is that place in New Jersey", "I don't remember". When the Plaintiff asked the staff if she could maybe go into the kitchen to have the conversation at a closer range so to not yell projecting voice facing the dorms. The staff told the plaintiff not to "hold grudges".

   **August 11, 2020** - Plaintiff and her daughter had a conversation regarding homes (attached and detached). Plaintiff was looking in Delaware and New Brunswick New Jersey.

- December 2020 Christmas break - Plaintiff left a portable WIFI belonging to the Philadelphia school district on her bed as she ran an errand. When she returned the paper with the password that came in the box was removed stolen from inside the box. Plaintiff did not share

- a room with anyone at the time of this. She was in room 2 and it was during a restriction quarantine.

- Residents often made comments for Plaintiff to hear regarding activity and conversations that Plaintiff conducted in the privacy of her own room or not on the shelter premises. For example: One resident began to speak loudly, "I was texting you from my iWatch". This particular resident did not own an iWatch or iPhone at the time of this conversation. However, the Plaintiff was in the computer room earlier that day updating her iPhone and pairing her watch. She text someone from her watch at the time

## NOISE HARASSMENT / RETALIATION

- January - January - Plaintiff and minor child was always wakened from sleep with extra loud talking from staff who projected their voices to the hallway where the Plaintiffs room was the first room. Residents who would walk past the room and yell out catch statements and phrases at Plaintiffs door.

- Resident and maintenance staff stood outside Plaintiffs door on the 2nd Floor and had conversations quite loudly. At this time a recording was scrambled the Plaintiff was making with her son.

- **During March - June 2020** Plaintiff quarantined on the 2nd floor and her window was in the back of the building. She was wakened out of her sleep daily by cars revving engines loudly daily, Officers having loud conversations, and Shelter staff that came out and had conversations under Plaintiffs window or across the street and spoke very loudly, projecting their voices. Also, residents would come and meet in the hallway and have conversations that started off low and ended with projected voices when something was being said for the Plaintiff to hear.

- Resident next door to plaintiff on the 2nd floor went to her room and began to yell at the adjoining wall "I'm God". (Comment that is synonymous to the phrase IGOD located in Plaintiffs Facebook cookie browser which was hacked by CCBC FROM 2014 - 2015). **(Retaliation)**

- **June 17, 2020** - 6:05 pm Plaintiff was threatened and felt threatened by a resident from the 2nd Floor who came into the computer room moments after her son left. She held the phone to ear but did not speak. She began to open cabinet doors and slam all of them closed. Then blurted out "I will beat that ass". Police Report 20-16-25665. **(Noise Campaign, Stalking and intimidation)**

- **Noise campaigns** outside of the window by staff as well as indoors. Staff will come and yell sing under the window, "savage and nasty".

- **Approximately June 2020** - Resident sniffed around me whenever she saw me talking with staff. This resident told staff that plaintiff left hair on the sink in the bathroom. When the

resident was asked to please mind her business she stated with her phone in her hand as if she was recording, "look who's talking", "look who's talking". This resident would not leave until staff requested her to. The sniffing is "Conditioning where victims are sensitized to certain stimuli" (www.ohchr.org). The Plaintiff had nasal surgery in winter of 2013. Plaintiff began working for CCBC in March 2014. Plaintiff was still healing from the nasal surgery, and would sniff often. CCBC used sniffing as a form of harassment against Plaintiff and the sniffing followed the Plaintiff now to Philadelphia.

- **September 2020** - Plaintiff sat down with Staff in her office to ask for assistance with diffusing an issue that interfered with son sleeping and ability to focus in school. The roommate of Plaintiff sets an alarm at 4:30 am, snooze several times, turns on the light, rattles plastic bags, open and closes storage bins multiple times, fidgets with candy wrappers and plastic bags, leaves the room slamming the door several times and takes phone conversations. Staff asked Plaintiff, "well, do you know *why* this is happening?" Then September 18th happened.

- **September 26, 2020** - Approximately 6AM - Staff stood in front of the staff locker room and heckled loudly an entire conversation down the hall to other staff in the office. Plaintiff and son were in the room across from staff locker room attempting to sleep.

- **September 26, 2020** - Approximately 8am - resident was at her locker directly in front of Room 1 (Plaintiffs room). Resident yelled extremely loud to her daughter who was in Room 6 down the hall 3x's.

- **Noise Campaign** - 6am - until school time, neighbors upstairs conduct stomping in the corner only, where the Plaintiffs bunk beds are from upstairs. Every morning and every night at 10 pm for about an hour or so during the week. On weekends the stomping can last for hours at night. **(Harassment)**.

## SEXUAL HARASSMENT

- **July 27, 2020** - Plaintiff was watching movies on her laptop in her bunk with privacy covers down. 11 pm after Plaintiffs roommate came in and climbed into her bunk, a resident came into the room and began to pull to privacy covers back attempting to come into Plaintiffs bunk. When Plaintiff said "hello" questionable, the person turned and walked out of the room. When Plaintiff talked with Staff about it the next morning, she was laughed at and staff replied "maybe they like what you look like or maybe they like the way you put your stuff together". Days earlier Plaintiff had a conversation on the phone with her sister and there was a joke with content of the Plaintiff liking girls. If Plaintiffs calls were not exploited, the young lady would not have attempted to get into Plaintiffs bed with her.

## CONSPIRACY AGAINST RIGHTS - 18 U.S.C. Sec. Sec. 241, 242. CIVIL ACTION FOR DEPRIVATION OF RIGHTS - 42 U.S.C Sec 1985.

- PEC - Gloria's Place ran a gang stalking facility which incorporate various forms of harassment tactics geared toward Plaintiffs personal life and career which happened when

Plaintiff lived in Maryland, prior to her moving to Philadelphia. Item 4 shows the behavior of Plaintiffs roommate who through fruity pebbles cereal on Plaintiffs belongings and wiped a substance with the smell of urine on the water bottle which belonged to Plaintiff. All happening after Plaintiff filed her complaint in court in February 2020. The roommate's behavior changed from inauthentic friendship to hate rather quickly. Item 7 shows staff reciting statements of stored communication (emails) that was sent to Plaintiff by a former supervisor in Maryland - CCBC. Item 30 speaks of a neighbor resident who talked about being God saying I'm God which is the same as the content found in Plaintiffs web browser (web kit) after employment at CCBC. ("IGOD"). Item 34 highlights residents sniffing whenever they see the Plaintiff talking to a staff member. Sniffing started in CCBC due to nasal surgery after effects. The sniffing followed Plaintiff from CCBC, Job Corps, Antwerpen, Baltimore County Infants and Toddlers to Philadelphia PEC - Gloria's Place.

### VIOLATION OF PRIVACY by way of INTRUSTION OF   SOLITUDE INCLUDING CYBERSTALKING 18 - U.S.C Sec 2261(A),
**Title III of the Omnibus Crime Control and Safe Streets Act of 1964 (Wiretap statute) Electronic Communications Privacy Act - 18 U.S.C § 2510, 3121; Stored Communications Act- 18 U.S.C § 2701; and Violation of Privacy by way of Intrusion of Solitude including Stalking and cyberstalking - 18 U.S.C § 2261(1)(A)(1)(2)(B)(2)(b); under the direction of the Department of Defense and the Department of Education.**

- Items 17 - 27 shows instances where Plaintiffs private conversations where listened to or even read by speech to text method. Plaintiff have found View Controller in her technology showing speech recognition and wiretapping Plaintiffs technology. Staff at Gloria's Place had real-time access to her personal conversations and they followed her legal proceedings. Staff knew Plaintiffs conversations she had when she was at home with family regarding parties, when Plaintiff took pictures with her personal iPhone, if she was texting from her iWatch or iPhone, homes Plaintiff looked at in New Jersey via conversations in her phone, or if Plaintiff blocked a number in her phone. Staff and residents at Gloria's Place continuously violated Plaintiffs privacy from January - 2020 - January 2021.

### HARASSMENT - NOISE CAMPAIGNS, RETALIATION, STALKING AND SEXUAL
**Defamation - 28 U.S.C § 4101(1);**
**Intentional Infliction of Emotional Distress**

42. Items 1 - 15 shows intimidating Plaintiff and her minor child by residents in shelter. Item 35 highlights Plaintiff speaking in private to a staff member regarding the behavior of the roommate and the staff was more concerned with "why" these things were happening. The Plaintiff could only see the staff meaning the Plaintiff is reason about happenings in the shelter. However, Plaintiff don't have friends in the shelter and therefor only talks on her phone to family. If the roommate is made aware of the personal conversations of the Plaintiff, then there is illegal access to Plaintiffs technology and staff is aware and informing shelter residents.
Item 8 explains a resident going to the church (across the street from the shelter) where Plaintiff volunteered and defamed the Plaintiff to the First Lady of the Church. Since the Plaintiff have helped the church, she was the only one from the shelter there.

Items 29 - 39 is the use of sound campaigns which is a community harassment technique directed at the victim. Included is sleep deprivation tactics which can aid in entrapment where Plaintiff is harassed to the point that she lashed out and commit a crim such as assault -Items 29, 32, 36, & 37. While conducting acts to disrupt sleep, harassers/residents provoke verbal and physical confrontations to make Plaintiff break and look like she is the cause of everything - www.ohchr.org. Sexual Harassment in Item 37 is due to Plaintiffs private conversations being listened too or read by the use of view controller speech to text method.

## Summary

While residing at PEC - Gloria's Place, the Plaintiff is the target of a launched campaign of harassment which stems from her exercising her civil rights engaging in activity that is protected by the law, when employed at the Community College of Baltimore County in Maryland and was constructively discharged. PEC - Gloria's Place staff and residents engaged in a continuation of interstate adverse retaliation. Incidents were reported to Management. Events were escalated.

Harassment is words, conduct, or action repeated, or persistent directed at a specific person and annoys, alarms, or causes substantial emotional distress, mental distress, mental anguish = depression, humiliation, shame, shock, grief, anxiety, worry, fear. *Section 2261(B) 18 U.S.C. Sec2261A(2)(B); Adams v. Ford Motor C., 653 F.3d 299 307(3d. Cir.2011.* Staff and residents both conducted noise campaigns directly at the Plaintiffs door and under her window. Plaintiff was the target of intimidation, hostility, offensive comments, violation of privacy, sexual harassment, invasion of privacy, defamation, stalking, adverse activity which turned Gloria's Place into a hostile environment. *Burlington N. & Santa Fe R.R. Co. v. White, 548 U.S. 53(2006); Weeks v. U.S., 232 U.S. 383; Hester v. U.S., 265 U.S.57.* Staff and residents at Gloria's Place continued the campaign of harassment against the plaintiff, (Maryland to Pennsylvania). Staff orchestrated activity that included referencing, direct statements (catch phrases) made in earshot of Plaintiff of activity which occurred in Plaintiffs technology and social media streaming posts of Plaintiffs history as well as Plaintiffs phone calls - violating ECPA - 18 U.S.C § 2510, 3121, SCA - 18 U.S.C § 2701, Violation of Privacy / Cyberstalking - 18 U.S.C § 2261(1)(A)(1)(2)(B)(2)(b); Some happenings Staff should not be aware of due to Plaintiffs short time in Philadelphia. Such as Plaintiffs sexual status, whether or not plaintiff "talks a lot", prior work history, legal situations. Staff also orchestrated conflicts that would lead into possible physical altercations as Plaintiff experienced in September 2020. Plaintiff has been awaiting a response from the Career counselor for employment assistance as well as resume revamping as they continue to withhold resources. Civil action for deprivation of rights 42 USC. Sec 1985(2). All acts were designed as stated by the Behavior Specialist in Item 2, to cause Intentional Infliction of Emotional Distress - Tort Claim.

## RELIEF SOUGHT

WHEREFORE, (Rule 8 (a)(3),Plaintiff prays that this Court enter an order permanently enjoining Defendants, their agents, employees, subordinates, successors in office, and all those acting in concert or participation with them from continuing the acts, practices and omissions at the facilities set forth in all items above, and to require Defendants to take such action as will bring Defendants into compliance with federal law and provide legal and constitutional conditions of care to persons who work in their employment establishments and/or reside. The Plaintiff further prays that this Court grant such other and further equitable relief as it may deem just and proper to the Plaintiff, if the relief sought does not meet Court requirement for remedy given the circumstances of Pro Se representation.

Plaintiff request $500,000 (five hundred thousand includes relief for minor child)

### References:

Adams v. Ford Motor C., 653 F.3d 299 307(3d. Cir.2011)

Beye v. Bureau of National Affairs, 59 Md. App. 642, 658, 477 A.2d 1197 (1984).

Burlington N. & Santa Fe R.R. Co. v. White, 548 U.S. 53(2006)

Burlington Industries Inc., v. Ellerth, 524 U.S. 742 (1998)

Conspiracy Against Rights 18 U.S. Code Section 241.

First Amendment Violation Participation Clause of Title VII - EEO Law 29 C.F.R. 4 1614, 105; Statute 42 U.S. 2000e-3(a) Defamation of Character.

Faragher v. City of Boca Raton, 524, U.S.775 (1998)

Hester v. U.S., 265 U.S.57

Multistalkervictims.org/Targ.htm

Office of the United Nations High Commissioner for Human Rights - www.ohchr.org

Privacy Act of 1964 - FCA - Section 605; Violation of U.S. Constitutional Rights Amendment IV and V - Public Disclosure of Facts and False Light - CFAA = Prohibits unauthorized use of technology; Title VII of the Civil Rights Act of 1964, ADA, Violation of Privacy, Sexual Harassment, Obstruction of Justice, Retaliation.

United States Constitution - Fourth Amendment - ACLU.org/other/NSA-SPYING-AMERICAN-ILLEGAL

U.S. v. Katz 389 US 347

U.S. Code Title 50, Chapter 36, Subchapter 1, Section 1809

Weeks v. U.S., 232 U.S. 383

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __**MAY 11, 2021**__ a copy of the **Claim against PEC - Gloria's Place was** drafted by the Plaintiff (Racquel Lewis - Davis) was mailed postage prepaid to the following address:

*[signature]*

Racquel Lewis - Davis
177 Sands Street, 5B
Brooklyn New York 11201
Coreelement@protonmail.com
757 693 0076
Plaintiff - *Pro Se*

2021 MAY 11  P 4:10

USDC-EDPA
CLERK



U.S. District Court
Eastern District of Pennsylvania
601 Market Street
Clerks Office
Claims