**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RACQUEL LEWIS-DAVIS, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 21-CV-2180 |
| | : | |
| PEC-GLORIA'S PLACE, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

PADOVA, J.                                                                JULY 28, 2021

Racquel Lewis-Davis filed this civil action against "PEC-Gloria's Place," a women's shelter in Philadelphia where she previously resided with her minor son, and Kathleen Desmond, identified as "President." Lewis-Davis seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Lewis-Davis leave to proceed *in forma pauperis* and dismiss her Complaint.

## I.        FACTUAL ALLEGATIONS

Lewis-Davis's Complaint cites numerous federal civil and criminal statutes and state torts as the bases for her claims. At bottom, her claims derive from her experience as a resident at Gloria's Place. The Complaint lists various encounters and interactions that Lewis-Davis had with other residents and with staff during her stay at the shelter for approximately a year. Lewis-Davis alleges that these encounters reflect a broad conspiracy against her that includes improperly accessing her personal electronic devices or other personal communications and using her personal information to harass and torment her, which allegedly began when she lived in Maryland and continued in Philadelphia. (*See, e.g.*, ECF No. 1 at 3, 7-8 ("PEC-Gloria's Place ran a gang stalking facility which incorporate[d] various forms of harassment tactics geared

1

toward Plaintiff[']s personal life and career which happened when Plaintiff lived in Maryland,

prior to her moving to Philadelphia."); *see also id.* at 8 ("Staff at Gloria's Place had real-time

access to [Lewis-Davis's] personal conversations and they followed her legal proceedings" and

staff and residents allegedly "continuously violated her privacy from January 2020 through

January 2021"); *id.* ("If the roommate is made aware of personal conversation of the Plaintiff,

then there is illegal access to [her] technology and staff is aware and informing shelter

residents.").)[1]  The Court understands Lewis-Davis to be alleging that the conspiracy extended to

and impacted her employment in Maryland and/or that the harassment she experienced at

Gloria's Place was intended to retaliate against her for matters relating to her employment or a

complaint she filed about her employment.[2]  (*See id.* at 9 ("While residing at PEC – Gloria's

Place, the Plaintiff is the target of a launched campaign of harassment which stems from her

exercising her civil rights engaging in activity that is protected by the law, when employed at the

Community College of Baltimore County in Maryland and was constructively discharged.  PEC

– Gloria's Place staff and residents engaged in a continuation of interstate adverse retaliation.").)

In one instance, Lewis-Davis indicates that the United States Department of Defense and

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] In February of 2020, Lewis-Davis filed a complaint in this Court against her former employer in Maryland and two individuals, in which she claimed she was discriminated against in employment and retaliated against.  *See Lewis-Davis v. Baltimore Cty. Pub. Sch. Infants & Toddlers Program*, Civ. A. No. 20-723 (E.D. Pa.).  That case was promptly transferred to the United States District Court for the District of Maryland.  *Id.* (ECF No. 6).  It is not clear whether this is the same "complaint" at times referred to in Lewis-Davis's Complaint in the instant case, although there is a suggestion and fair inference that is the case.  (*See* ECF No. 1 at 7-8.)  As the former case proceeded in the District of Maryland, Lewis-Davis filed an amended complaint, which expanded her claims to "alleg[e] a vast conspiracy to discriminate against her, harass her, violate her privacy, and generally inflict harm on her."  *See Lewis-Davis v. Baltimore Cty. Pub. Sch. Infants & Toddlers Program*, Civ. A. No., 2021 WL 1720235, at *1 (D. Md. Apr. 30, 2021).  The amended complaint was dismissed for various reasons, with leave to further amend, and proceedings are ongoing in the District of Maryland.

Department of Education directed the violation of her privacy by directing the stalking and cyberstalking she alleges in her Complaint.  (*Id.* at 8.)

It is apparent from the Complaint that Lewis-Davis and her roommate did not get along. Among other things, Lewis-Davis alleges that her roommate "spread urine substance" on her water bottle and "threw a cup or bowl of Fruity Pebble Cereal onto Plaintiff[']s son[']s storage bins on Plaintiff[']s side of the room" after an unspecified complaint was filed in February, and that she and her son were called names and spoken to or about unfavorably by other residents. (*Id.* at 2-4.)  Lewis-Davis claims that staff at Gloria's Place misinformed her about rules and requirements and that a case manager called her "crazy."  (*Id.* at 2-3.)  The Court will not recount all the interactions alleged in the Complaint.  By way of example, the Complaint describes the following incident that took place in May or June of 2020:

> Staff Cafeteria "first you up here (hand gestures) now you down here", I see you, I see you". Laughed and saying as she walked away, "I don't understand it". Plaintiff was the only other person in the cafeteria and Staff looked at Plaintiff when she was saying it.  (Please see CCBC AOL Email hack regarding this phrase).  ONGOING RETALIATION; DEFAMATION

(*Id.* at 3.)  The Complaint is comprised of several descriptions of this type of interaction with others during Lewis-Davis's stay at the shelter.

After Lewis-Davis was moved to a private room at the onset of the pandemic caused by COVID-19, a mirror was allegedly removed from her door and a screen was removed from her window.  (*Id.* at 4.)  She continued to have interactions with other residents and staff often resulting in exchanges of words that Lewis-Davis alleges represent a violation of her privacy and reflect that her electronic data was hacked or interfered with and improperly used to harass her and/or retaliate against her.  (*Id.* at 4-6.)  For example, Lewis-Davis notes that a resident in the room next door yelled "I'm God" at the wall, which Lewis-Davis notes is "synonymous to the

phrase 1GOD located in [her] Facebook cookie browser which was hacked by CCBC from 2014-2015."[3]  (*Id.* at 6.)  It appears that in September 2020, Lewis-Davis was living in a room with a roommate; Lewis-Davis met with staff to address issues with the roommate's behavior including her setting an alarm for 4:30 a.m., hitting the snooze button several times, and generally causing considerable noise that interfered with sleep.[4]  (*Id.* at 7.)  The Complaint suggests that Lewis-Davis's issues were not resolved and indicates that various residents and staff began a "noise campaign" that interfered with her ability to sleep.  (*Id.*; *see also id.* at 9 (stating that "the use of sound campaigns . . . is a community harassment technique directed at the victim").)  She also alleges that she began "sniffing" after having nasal surgery when she was employed in Maryland, and that residents would sniff when they saw her talking to a staff member, conduct that she claims followed her from Maryland to Philadelphia.  (*Id.* at 8.)

Lewis-Davis also describes an incident in July of 2020 during which she was "watching movies on her laptop in her bunk with privacy covers down" when another resident "came into the room and began to pull to [sic] privacy covers back attempting to come into [her] bunk."  (*Id.* at 7.)  Lewis-Davis said "hello" and "the person turned and walked out of the room."  (*Id.*)  Lewis-Davis reported the incident to staff, who allegedly joked that the resident may have liked the way Lewis-Davis looks, which she claims is evidence her phone calls were "exploited" because "[d]ays earlier [she] had a conversation on the phone with her sister and there was a joke

---

[3] CCBC appears to be a reference to the Community College of Baltimore County, one of Lewis-Davis's former employers.  *See Lewis-Davis*, 2021 WL 1720235, at *1.

[4] It is not clear whether this roommate is the same roommate Lewis-Davis had before the pandemic.

with content of [her] liking girls."  (*Id.*)  Lewis-Davis describes this incident as "sexual

harassment."  (*Id.*)

The Complaint reflects Lewis-Davis's desire to raise numerous violations of federal and

state law.  She seeks "an order permanently enjoining Defendants . . . from continuing the acts,

practices and omissions at the facilities set forth in all items above" and to require "legal and

constitutional conditions of care to persons who work in their employment establishments and/or

reside."[5]  (*Id.* at 10.)  She also seeks $500,000, which includes "relief for [her] minor child."[6]

(*Id.*)

## II.     STANDARD OF REVIEW

The Court will grant Lewis-Davis leave to proceed *in forma pauperis* because it appears

that she is not capable of paying the fees to commence this civil action.  Accordingly, the

Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), which require the Court to dismiss

the Complaint if it is frivolous or fails to state a claim.  A complaint is subject to dismissal under

---

[5] Since Lewis-Davis no longer resides at Gloria's Place in Philadelphia, and since there is no indication it is likely she will reside there in the future, her request for prospective injunctive relief is moot.  *See Rosetti v. Shalala*, 12 F.3d 1216, 1223 (3d Cir. 1993) ("[F]ederal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them." (internal quotations omitted)); *see also Bellocchio v. New Jersey Dep't of Envtl. Prot.*, 602 F. App'x 876, 879 (3d Cir. 2015) (*per curiam*) ("As an initial matter, Bellocchio's claims for injunctive relief against all Defendants are moot, as the Bellocchios moved from their home.").

[6] Approximately two months after submitting her Complaint to the Court, Lewis-Davis filed a "Notice of Claim" (ECF No. 6), which is not part of the Complaint, but contains additional allegations, including some against parties who are not named as Defendants in this case. Several of the allegations in the Notice repeat those raised in the Complaint, and other allegations appear to provide more details in support of the alleged conspiracy at Gloria's Place. Additional allegations concern events that bear no apparent relation to the claims alleged in the Complaint.  Even if the Court were to consider these allegations, they do not cure the defects in the Complaint that are noted below.  To the extent Lewis-Davis is pursuing claims against defendants not named here separate and apart from the claims alleged in her Complaint, she must file a separate lawsuit against the appropriate defendants.

§ 1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v.*
*Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless
legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless
"when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v.*
*Hernandez*, 504 U.S. 25, 33 (1992).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the
same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),
*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to
determine whether the complaint contains "sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* Moreover, "if the
court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the
action." Fed. R. Civ. P. 12(h)(3). As Lewis-Davis is proceeding *pro se*, the Court construes her
allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

### A.   Claims Raised on Behalf of Lewis-Davis's Son

It appears that Lewis-Davis intends to raise claims on behalf of her minor son and seek
relief on his behalf. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases
personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may
conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of*
*Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect
for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth*
*Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although an individual may

represent herself *pro se*, a non-attorney may not represent other parties in federal court.  *See*

*Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-

lawyer may not represent another person in court is a venerable common law rule."), *abrogated*

*on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516

(2007).  Furthermore, "a plaintiff must assert his or her own legal interests rather than those of a

third party" to have standing to bring a claim.  *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*,

657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)).  For these reasons, any claims that

Lewis-Davis brings on behalf of her son must be dismissed without prejudice for lack of

standing.

### B.  Lewis-Davis's Claims

Reading the Complaint as a whole, the Court concludes that Lewis-Davis's allegations

lack a factual basis and do not support a plausible conspiracy claim.  Her allegations about

interactions with residents and staff do not support her claim that Gloria's Place and its

"President" conspired against her by misusing her private electronic communications against her

for purposes of harassing her and retaliating against her for complaints she made against a

former employer or employers in Maryland.  *See, e.g.*, *West v. United States*, 779 F. App'x 148,

149 (3d Cir. 2019) (*per curiam*) ("After carefully reviewing West's lengthy complaint and his

voluminous attachments, we agree with the District Court that dismissal was proper,

as West seeks relief based on his contention that he has suffered a 'covert civil death' over the

course of decades due to the alleged actions of countless individuals across the world."); *Khalil*

*v. United States*, Civ. A. No. 17-2652, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (finding

plaintiff's allegations "wholly incredible" when he alleged "a broad conspiracy involving

surveillance of and interference with his life by the United States and various government

actors").   It may be that Lewis-Davis did not have a pleasant or favorable experience during her

stay at the shelter, but the sum of her experiences does not plausibly translate into the claimed

conspiracy against her.  *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d

159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff must

assert facts from which a conspiratorial agreement can be inferred.").   Due to "the vast power,

scope, and complication of the whole alleged conspiracy," *Caesar v. Megamillion Biggame

Lottery*, 193 F. App'x 119, 121 (3d Cir. 2006) (*per curiam*) — which is alleged to span two

states, several years, the federal government, and otherwise unrelated entities, and to target

Lewis-Davis in her daily interactions with various people — the Court will dismiss the

Complaint as lacking a basis in fact and, alternatively, as implausible.

In any event, there are other defects in Lewis-Davis's claims.  First, she cites many

federal criminal statutes as the basis for her claims, but criminal statutes generally do not give

rise to a civil cause of action.  *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver,

N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action

from a criminal prohibition alone[.]"); *see also Colon-Montanez v. Pennsylvania Healthcare

Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (*per curiam*) ("[T]hese criminal statutes [18

U.S.C. §§ 241 and 242] provide no private right of action for use by a litigant such as Colon–

Montanez."); *Humphrey v. Pa. Ct. of Common Pleas of Philadelphia*, 462 F. Supp. 3d 532, 535

n.2 (E.D. Pa. 2020) (explaining that numerous courts have held that the Violence Against

Women Act, 18 U.S.C. §§ 2261-2262, does not provide a private right of action); *Rovetto v.

Dublirer*, Civ. A. No. 20-2497, 2020 WL 7022667, at *9 (D.N.J. Nov. 30, 2020) (explaining that

"8 U.S.C. § 4101 is a provision of the Securing the Protection of our Enduring and Established

Constitutional Heritage Act (SPEECH Act), 28 U.S.C. §§ 4101 *et seq.*, which was enacted to

prohibit recognition and enforcement of foreign defamation judgments and certain foreign judgments against the providers of interactive computer services" and does not support a federal cause of action for defamation).

To the extent Lewis-Davis cites criminal statutes that provide for a private right of action, she has not alleged rational facts that plausibly support the Defendants' liability under those statutes. *See Lewis-Davis*, 2021 WL 1720235, at *16 (explaining that Lewis-Davis failed to state a claim under the Electronic Communications Privacy Act based on conclusory allegations that her software programs were intercepted, and failed to state a claim under the Computer Fraud and Abuse Act because she failed to allege that she suffered a qualifying loss under the statute); *Miller v. Kruzik*, Civ. A. No. 06-0463, 2009 WL 10718510, at *7 (M.D. Pa. Feb. 23, 2009) ("In order to establish a violation of the Federal Wiretapping Act, a plaintiff must satisfy two elements: the interception must have violated the law, and the defendant must have known or had reason to know this when he disclosed the contents of the intercepted communication." (internal quotations omitted)).  In other words, her claims related to the improper access and use of her digital information under these statutes fail for the same reasons her conspiracy claims fail.

Second, Lewis-Davis has failed to state a claim for violation of her constitutional rights under 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).

"To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted); *see also Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Lewis-Davis has not alleged facts from which it could be plausibly inferred that the Defendants — Gloria's Place and its "President," Desmond — were acting under state law such that they are subject to liability under § 1983.  Nor are there any allegations against Desmond personally that would support a claim against her.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable).

Third, to the extent Lewis-Davis invokes 42 U.S.C. § 1985, her claims fail.  42 U.S.C. § 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ."  42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act

in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  Lewis-Davis has not adequately alleged a conspiracy against her for the reasons above, nor has she alleged that the claimed conspiracy was motivated by race or class-based animus as is required to plead a § 1985 claim.

Fourth, to the extent Lewis-Davis invokes federal or state laws prohibiting discrimination in employment, those laws are not applicable here because Lewis-Davis was not an employee of Gloria's Place.

Finally, to the extent Lewis-Davis raises state tort claims, her allegations primarily appear to be directed at third parties who are not Defendants in this case or based on facts that rise to the level of irrational, so they do not support a claim against the Defendants.  Indeed, there are no allegations against Desmond whatsoever.  In any event, even assuming a non-frivolous basis for a claim against the Defendants, the only independent basis for jurisdiction over any state tort claims is 28 U.S.C. § 1332, which states that a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  *Id.*  An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  A corporation is a citizen of the state in which it was incorporated as well as where it has its principal place of business.  *See* U.S.C. § 1332(c)(1).  "[T]he citizenship of partnerships and other unincorporated associations is determined by the citizenship of its partners or members." *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420.  "The burden of establishing federal jurisdiction

11

rests with the party asserting its existence." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

Lewis-Davis identifies herself as "a resident in Philadelphia," (ECF No. 1 at 2), but she provided an address for service in Brooklyn, New York, and the citizenship of the Defendants is not pled. Accordingly, to the extent there are any nonfrivolous tort claims against the Defendants at issue in the Complaint, the Complaint does not adequately allege a basis for the Court's jurisdiction over any such claims.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Lewis-Davis leave to proceed *in forma pauperis* and dismiss her Complaint. Having reviewed all Lewis-Davis's submissions in their entirety and in light of the Court's conclusion above concerning the lack of factual basis for Lewis-Davis's claims, the Court concludes that amendment would be futile. An appropriate Order follows, dismissing this case.

**BY THE COURT:**

**/s/ John R. Padova**

_____

**JOHN R. PADOVA, J.**